UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRETT MESSIEH and DREW LEE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>HDR GLOBAL TRADING LIMITED, ABS GLOBAL TRADING LIMITED, 100X HOLDINGS LIMITED, SHINE EFFORT INC LIMITED, HDR GLOBAL SERVICES (BERMUDA), ARTHUR HAYES, BEN DELO, GREG DWYER, and SAMUEL REED,<br><br>    Defendants. | No. 1:20-cv-03232-ALC<br><br>ORAL ARGUMENT REQUESTED |

### DEFENDANT BEN DELO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Harlan A. Levy
Allen M. Thigpen
FOLEY HOAG LLP
1301 6th Avenue
New York, NY 10019
Tel.: (212) 812-0354
hlevy@foleyhoag.com
athigpen@foleyhoag.com

Patrick J. Smith
Selbie L. Jason
CLARK SMITH VILLAZOR LLP
250 West 55th Street, 30th Floor
New York, NY 10019
Tel.: (212) 582-4400
patrick.smith@csvllp.com
selbie.jason@csvllp.com

*Attorneys for Defendant Ben Delo*

Dated: May 2, 2023

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................... 1

PLAINTIFFS' ALLEGATIONS ..................................................................................................... 3

    I.    ALLEGED CONDUCT UNDERLYING PLAINTIFFS' CLAIMS. ................................. 3

    II.    THE SAC LACKS SPECIFIC ALLEGATIONS AGAINST DELO. ................................ 4

ARGUMENT ................................................................................................................................... 6

    I.    THE ALLEGED SEPARATE CRIMINAL PROCEEDINGS ARE IRRELEVANT TO THE PERSONAL JURISDICTION INQUIRY. .................................................................. 7

    II.    THE COURT LACKS PERSONAL JURISDICTION OVER DELO. ............................... 8

        A.    Plaintiffs Fail to Allege Delo Had Minimum Contacts with the U.S. ............................ 9

            i.    Plaintiffs Fail to Allege that Delo Expressly Aimed Conduct at the U.S. .................. 10

            ii.    Delo Did Not Purposefully Avail Himself of the Privilege of Conducting Activities in the Forum. ................................................................................................. 11

            iii.    Plaintiffs' Claims Do Not Arise Out of or Relate to Any Conduct by Delo. ......... 12

            iv.    Plaintiffs' Generalized Allegations that Delo "Controlled" BitMEX Are Insufficient to Confer Specific Jurisdiction Over Delo. ......................................... 13

        B.    Exercising Jurisdiction Over Delo Would Be Unreasonable. ...................................... 14

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Alki Partners, L.P. v. Vatas Holding GmbH*,
  769 F. Supp. 2d 478 (S.D.N.Y. 2011) .................................................................................. 14

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ............................................................................................. 11

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021) ................................................................... 6, 7, 8, 13

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
  2014 Dist. LEXIS 45891 (S.D.N.Y. Mar. 31, 2014) ............................................................ 12

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ......................................................................................................... 10

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 F. App'x 16 (2d Cir. 2015) ............................................................................................. 6

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) ........................................................................... passim

*In re Amaranth Nat. Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ................................................................................ 8, 9

*In re AstraZeneca Secs. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008) ............................................................................. 13, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2019 U.S. Dist. LEXIS 49700 (S.D.N.Y. Mar. 25, 2019) ....................................................... 9

*In re Terrorist Attacks on September 11, 2001*,
  714 F3d 659 (2d Cir. 2013) ................................................................................................... 11

*Johnson v. UBS AG*,
  791 F. App'x 240 (2d Cir. 2019) .......................................................................................... 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) ................................................................................................. 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) .............................................................................................. 2, 14

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ..................................................................................................... 6

*SEC v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013) .................................................................................. 15

*Tarsavage v. Citic Tr.*,
  3 F. Supp. 3d 137 (S.D.N.Y. 2014) ............................................................................ 2, 10, 11

*U.S. Bank Nat'l Ass'n v. Bank of Am.*,
  916 F.3d 143 (2d Cir. 2019) ................................................................................................ 9

*United States v. Halkbank*,
  2020 U.S. Dist. LEXIS 153036 (S.D.N.Y. Aug. 24, 2020) ...................................................... 7

*United States v. Hayes*,
  99 F. Supp. 3d 409 (S.D.N.Y. 2015) ...................................................................................... 7

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................. 2, 9, 10

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016) ................................................................................................ 9

**Statutes**

7 U.S.C. § 25(c) ........................................................................................................... 9, 10

**Rules**

Fed. R. Civ. P. 12(b)(2)……………………………………………………..……………………………………1

Defendant Ben Delo ("Delo") respectfully submits this memorandum of law in support of his motion to dismiss the Second Amended Class Action Complaint (the "SAC") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

Delo joins all Defendants in their Memorandum of Law in Support of their Motion to Dismiss the SAC (May 2, 2023) (ECF No. 121) and reasserts the arguments made therein. Delo respectfully submits this memorandum of law renewing an additional ground for dismissal of the claims against him: lack of personal jurisdiction.

Even after a previous round of briefing and three opportunities to plead their claims, Plaintiffs still fail to sufficiently allege that this Court has personal jurisdiction over Delo. In the SAC, Plaintiffs assert claims under the Commodity Exchange Act ("CEA") against all Defendants for deceptive device, manipulative device, and price manipulation. Plaintiffs also assert claims against the corporate Defendants for principal-agent liability and against the individual Defendants for alleged aiding and abetting. These claims are purportedly based on (1) BitMEX's alleged use of, and alleged failure to disclose, a so-called "Insider Trading Desk,"[1] (2) BitMEX's alleged use of anonymous accounts to trade against customers, and (3) BitMEX's alleged triggering of liquidations of customer accounts through alleged server freezes which purportedly resulted in the manipulation of prices on reference exchanges. Specific allegations purportedly implicating Delo in support of these claims are lacking, to say the least.

Plaintiffs used the opportunity to amend their pleading to introduce new allegations regarding the pleas and allocutions of Defendants Hayes, Delo, Reed, and Dwyer in separate

---

[1] The phrase "Insider Trading Desk" is nothing more than Plaintiffs' invention. Delo uses it here solely to avoid confusion when discussing the allegations in the SAC.

1

criminal proceedings in this District. Those pleas and allocutions were based on conduct and statutes entirely unrelated to the technical operation of and trading on the BitMEX platform. These new allegations are merely a tactic to prejudice Delo, distracting from the defective pleading of the SAC, and do not create personal jurisdiction over Delo. *See infra* pp. 7-8.

Like the Amended Complaint before it, the SAC contains no allegations about Delo's domicile or country of residence and makes only a handful of specific factual allegations about his conduct. Plaintiffs allege that Delo "was responsible for designing key trading systems implemented on the BitMEX platform," SAC ¶ 26, and that he helped conceive and design BitMEX's automatic liquidation system, *id.* ¶ 84. But Delo's alleged role in the conception and design of BitMEX's systems is not an allegation that Delo was involved whatsoever in any U.S. conduct related to the claims of fraud and manipulation asserted in the SAC. Plaintiffs also allege that Delo, along with others, received reports indicating that U.S. users were trading on BitMEX's platform (in violation of BitMEX's terms of services), *id.* ¶ 167, but the passive receipt of reports about the presence of U.S. users on the platform does not create personal jurisdiction over a foreign-residing defendant. *See Tarsavage v. Citic Tr.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014) (defendant's "mere knowledge would be insufficient for the Court to exercise jurisdiction").

The SAC contains the same fatal jurisdictional flaws as its predecessors and, for that reason, dismissal of the claims against Delo for lack of personal jurisdiction is just as necessary now as it was when he moved to dismiss the Amended Complaint. Plaintiffs have again failed to allege the required nexus between "[Delo], the forum, and the litigation," *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014), and the exercise of jurisdiction over Delo under the circumstances would not "comport[] with traditional notions of fair play and substantial justice," *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Accordingly, the SAC must be dismissed.

Given that Plaintiffs have had three opportunities to plead allegations sufficient to establish personal jurisdiction over Delo, but have failed to do so, dismissal should be with prejudice.

## PLAINTIFFS' ALLEGATIONS[2]

### I.  ALLEGED CONDUCT UNDERLYING PLAINTIFFS' CLAIMS.

Plaintiffs assert claims against Defendants HDR Global Trading Limited ("HDR"), certain of HDR Global's affiliates, Arthur Hayes, Ben Delo, Samuel Reed, and Greg Dwyer, under the CEA for deceptive device (First Cause of Action), manipulative device (Second Cause of Action), and price manipulation (Third Cause of Action). Plaintiffs also assert claims against the corporate Defendants for principal-agent liability (Fourth Cause of Action), and against the four individual Defendants for aiding and abetting (Fifth Cause of Action).

Plaintiffs' claims are predicated on three categories of allegations. First, Plaintiffs allege that BitMEX concealed the existence of a "trading desk, staffed by BitMEX employees . . . [that] trade[d] against BitMEX customers." SAC ¶ 114. According to Plaintiffs, the so-called "Insider Trading Desk" was allegedly managed by Dwyer and other "key-employees," two of whom the SAC alleges were Stuart Elkington and Nick Andrianov. *Id.* ¶ 116. The SAC alleges that the "Insider Trading Desk" had two advantages allegedly not available to regular BitMEX customers: (1) the "Insider Trading Desk" could allegedly view orders that BitMEX's customers had marked as "hidden," *id.* ¶ 118, and (2) the "Insider Trading Desk" could allegedly trade during server freezes while regular customers were locked out of the trading platform, *id.* ¶ 121. Plaintiffs allege that these two advantages "compounded each other" to give the "Desk" operators advantages over

---

[2] Delo incorporates pages 3-11 of Defendants' Memorandum of Law in Support of Their Motion to Dismiss the SAC (May 2, 2023) (ECF No. 121).

BitMEX customers. *Id.* ¶ 124. The SAC does not allege Delo was involved with the conception, strategy, or implementation of the supposed "Insider Trading Desk."

Second, Plaintiffs allege that BitMEX's server "routinely" experienced technical issues that "locked out users at crucial times." *Id.* ¶ 100. According to the SAC, these server freezes purportedly prevented customers from executing trades, but because the prices of BitMEX's products continued to move during server freezes, "liquidations [continued to] occur even while customers were locked out of their accounts." *Id.* ¶ 102. Plaintiffs allege that the timing suggests that these server freezes were "not random," and BitMEX made "a deliberate decision" to freeze its own servers, *id.* ¶ 158, despite BitMEX's alleged promises to "use commercially reasonable efforts" to "avoid downtime" in its platform, *id.* ¶ 112. Plaintiffs further allege that BitMEX's technical support team failed to properly address customer complaints. *Id.* ¶¶ 161-64. Notably, Plaintiffs do not allege that Delo participated in any of this alleged conduct.

Third, Plaintiffs allege, in conclusory fashion, that "Defendants persistently and regularly engaged in trading on their own platform and on U.S.-based third-party reference exchanges, including Coinbase, Bitstamp, and Kraken, that was designed to and did manipulate prices of these Bitcoin and derivative swap products in order to cause liquidations and profit Defendants." *Id.* ¶ 247. But, again, Plaintiffs do not allege that Delo (or any other individual Defendant) was involved in or had knowledge of any such specific trades on BitMEX or so-called third-party exchanges.

## II.   THE SAC LACKS SPECIFIC ALLEGATIONS AGAINST DELO.

Like its predecessors, the SAC does not contain any well-pleaded, non-conclusory allegations that Delo was involved in or had control of the alleged conduct giving rise to Plaintiffs' claims. Plaintiffs again fail to include any allegations about Delo's domicile or country of

4

residence, and the SAC contains few factual allegations about his conduct. The SAC alleges that "[a]s a mathematician, Defendant Delo was responsible for designing key trading systems implemented on the BitMEX platform." *Id.* ¶ 26, which was developed and operates "offshore," *id.* ¶ 58. Additionally, Plaintiffs assert that "[t]he [automatic liquidation] system is the brainchild of Defendants Delo and Dwyer, who designed and conceived it." *Id.* ¶ 84. Plaintiffs also allege that Delo was one of the founders of Defendant ABS Global Trading Limited ("ABS"), which is a Delaware corporation. *Id.* ¶ 18. These allegations are unchanged from the Amended Complaint.

The SAC contains only three new allegations involving Delo. First, Plaintiffs allege that Delo was one of the individuals who passively received reports from Defendant Dwyer that tracked the number of U.S. customers on the BitMEX trading platform. *Id.* ¶ 167. Second, Plaintiffs allege, in a single conclusory sentence without providing any specific factual allegations, that "Hayes and Delo allowed some influential users who they knew were U.S. persons to openly access and trade on BitMEX's platform." *Id.* Neither allegation creates personal jurisdiction over Delo. Third, Plaintiffs allege cherry-picked statements from Delo's allocution in a separate criminal proceeding concerning his knowledge that U.S. users were present on BitMEX's trading platform, which also fails to create personal jurisdiction. *Id.* ¶¶ 26, 68.

In his allocution, Delo stated that, although BitMEX knew U.S. users "found their way on to BitMEX," "[d]espite" BitMEX's "*no-U.S. user policy*," BitMEX "*would regularly find U.S. users and kick them off [the platform]*." *Id.* (emphasis added). In addition, while Delo acknowledged in his allocution that BitMEX did not "immediately act to restrict trading for . . . U.S. users" after BitMEX began tracking U.S. users "[i]n June 2018," he further stated that BitMEX "*took steps to limit access by U.S. users*." Declaration of Allen M. Thigpen, Exhibit A at Tr. 18:1-3, 13 (emphasis added). Plaintiffs omitted the latter statement from the SAC, selectively

5

quoting from the allocation. Moreover, the allocation does not reflect engagement in any fraudulent or manipulative activities—the conduct necessary for Plaintiffs' claims—in the United States ("U.S."), or elsewhere.

After three opportunities to plead their claims against Delo, Plaintiffs still do not allege that Delo had any knowledge of or participation in BitMEX's so-called "Insider Trading Desk" or any of the alleged statements regarding the "Desk." Plaintiffs also do not allege that Delo had any knowledge of or participation in the "Insider Trading Desk['s]" alleged advantages that purportedly allowed those individuals operating the "Desk" to trade against and profit from BitMEX customers. Nor do Plaintiffs allege that Delo had any knowledge of or participation in the alleged server freezes or execution of any specific trades.

## ARGUMENT

On a motion to dismiss for lack of personal jurisdiction, Plaintiffs bear the burden "of showing that the court has jurisdiction over the defendant." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 799 (S.D.N.Y. 2018) (Carter, J.) (citation omitted). To avoid dismissal, "plaintiff[s] must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (citation omitted). "A prima facie case [for personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021) (Caproni, J.) (plaintiffs "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone" (citations omitted)). Where, as here, plaintiffs have brought claims against multiple defendants, "plaintiff[s] must plead facts which, if true, are sufficient in themselves to establish jurisdiction as to each

6

defendant." *Das*, 332 F. Supp. 3d at 799 (citation omitted). For the foregoing reasons, Plaintiffs have again failed to meet their burden of establishing this Court's personal jurisdiction over Delo.

### I. THE ALLEGED SEPARATE CRIMINAL PROCEEDINGS ARE IRRELEVANT TO THE PERSONAL JURISDICTION INQUIRY.

In the SAC, Plaintiffs include pages of new allegations relating to separate criminal proceedings in this District in which the individual Defendants, including Delo, entered pleas with corresponding allocutions. Delo's plea in a separate criminal proceeding in no way affects the personal jurisdiction analysis in this civil case. *See United States v. Halkbank*, 2020 U.S. Dist. LEXIS 153036, at *45-46 (S.D.N.Y. Aug. 24, 2020) (minimum contacts test does not apply in criminal actions); *United States v. Hayes*, 99 F. Supp. 3d 409, 423 n.4 (S.D.N.Y. 2015) (rejecting application of personal jurisdiction jurisprudence in criminal case because "criminal law and civil law serve different purposes and have different sources and constraints").

As Plaintiffs' allegations make clear, the pleas entered by Delo and the other individual Defendants pertained to the failure "to establish, implement, and maintain an anti-money laundering program" in violation of the Bank Secrecy Act. SAC ¶ 177. This civil case, by contrast, alleges claims under the CEA for fraud, deception, and manipulation, all of which entail entirely different alleged conduct.

Even if the criminal case had involved similar allegations (it did not), courts in this District have held that plaintiffs cannot "rely on a finding that venue in this district is proper for [] criminal cases against [defendants] to prove that the Court has personal jurisdiction over those [d]efendants in this separate civil action, even if the underlying facts were identical." *Berdeaux*, 561 F. Supp. 3d at 398 ("The Court is unaware of any authority supporting the proposition that personal jurisdiction may be exercised over a party in a particular jurisdiction because venue was proper for criminal charges against that party.").

In *Berdeaux*, plaintiffs asserted claims against a group of defendants in connection with an alleged "fraudulent cryptocurrency scheme." *Id.* at 391. In opposing defendants' motions to dismiss for lack of personal jurisdiction, plaintiffs relied heavily on "criminal indictments, pleas, and convictions involving a majority of the individual [d]efendants." *Id.* at 398. Judge Caproni rejected the import of these criminal proceedings, concluding that, because "[p]laintiffs ha[d] not isolated any facts that were proven in [the criminal trial] to establish a prima facie case of specific jurisdiction," the defendant's "conviction on criminal charges in this jurisdiction, even if the charges grew out of the [alleged] fraud, [was] insufficient, in and of itself, to confer personal jurisdiction over him in this civil matter." *Id.* at 402. The same is true in this case; Delo's separate criminal proceeding has no bearing on this Court's personal jurisdiction over him.

Moreover, the selective portions of Delo's allocution referenced in the SAC do not describe any conduct directed at the U.S., let alone conduct which justifies the exercise of personal jurisdiction over him in this case. Like the inadequate allegations that Delo, and others, received reports about U.S. users on the platform, *id.* ¶ 167, the alleged statements from Delo's allocution regarding his mere knowledge of U.S. users and attempts to kick them off cannot create personal jurisdiction. *See infra* Section II.A.i.

  **II.**  **THE COURT LACKS PERSONAL JURISDICTION OVER DELO.**

Because Plaintiffs assert claims under the CEA which allows for service of process "wherever the defendant may be found," 7 U.S.C. § 25(c), for personal jurisdiction purposes, this Court need only consider whether exercising jurisdiction would comport with the Due Process Clause of the Fifth Amendment. *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008) ("*Amaranth I*"). To satisfy the Due Process inquiry, Plaintiffs must demonstrate that (1) "a defendant has sufficient minimum contacts with the forum to justify the

8

court's exercise of personal jurisdiction," and (2) "the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice.'" *Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). Plaintiffs do not satisfy either requirement.

### A.   Plaintiffs Fail to Allege Delo Had Minimum Contacts with the U.S.

In determining whether a complaint satisfies the Due Process inquiry for personal jurisdiction by "assessing minimum contacts, courts focus on the relationship among the defendant, the forum, and the litigation." *Das*, 332 F. Supp. 3d at 800. Plaintiffs may establish the requisite minimum contacts by showing that the Court has either general or specific jurisdiction over Delo. *Waldman*, 835 F.3d at 331. The Court does not have general jurisdiction over Delo as Plaintiffs have conceded. *See* ECF No. 72 (confirming that "the relevant personal jurisdiction test is specific jurisdiction").[3]

The Court also does not have specific jurisdiction over Delo.[4] "Specific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy." *Walden*, 571 U.S. at 283 n.6. To establish specific jurisdiction, Plaintiffs must show that (1) Delo "purposefully directed [his] conduct into the forum" or "purposefully availed [himself] of the privilege of conducting activities within the forum," and (2) their claims "arise out of or relate to [Delo's] forum conduct." *U.S. Bank Nat'l Ass'n v. Bank of Am.*, 916 F.3d 143, 150 (2d Cir. 2019);

---

[3] Specifically, the relevant forum for general jurisdiction is New York, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 U.S. Dist. LEXIS 49700, at *54 (S.D.N.Y. Mar. 25, 2019), and Plaintiffs do not allege Delo's domicile as New York or that Delo has "constant and pervasive" ties to New York such that he is "at home" in New York. *See Waldman*, 835 F.3d at 331 (citations omitted).
[4] The relevant forum for specific jurisdiction purposes is the U.S. because Plaintiffs assert claims under the CEA which allows for service "wherever the defendant may be found." 7 U.S.C. § 25(c); *see Amaranth I*, 587 F. Supp. 2d at 527.

9

*Das*, 332 F. Supp. 3d at 800. A "defendant's suit-related conduct must create a substantial connection with the forum." *Johnson v. UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019) (quoting *Walden*, 571 U.S. at 284). "When there is no connection" between the forum and the defendant's conduct alleged in the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [forum]." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 264 (2017).

Plaintiffs bring four claims against Delo: primary violations of the CEA for fraud-based deceptive device, fraud-based manipulative device, price manipulation, as well as aiding and abetting. The SAC does not contain *any* allegations of U.S. conduct by Delo that relate to these alleged fraud or price manipulation claims. Instead, the SAC merely alleges that Delo helped design BitMEX's automatic liquidation system, received reports about and was aware of U.S. user trading on BitMEX's platform, and that Hayes, Reed, and Delo "together" controlled BitMEX. These allegations are insufficient to establish specific jurisdiction over Delo.

i. **Plaintiffs Fail to Allege that Delo Expressly Aimed Conduct at the U.S.**

Delo does not reside in the U.S., Plaintiffs do not allege Delo's presence in the U.S., and the SAC expressly pleads that BitMEX was developed and operates "offshore." SAC ¶ 58. Any alleged "conduct that forms the basis of the [claims against Delo]" must therefore have occurred, if at all, "entirely out-of-forum." *Tarsavage*, 3 F. Supp. at 145 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013)). Accordingly, to justify the exercise of specific jurisdiction, Plaintiffs must meet the standards of the "effects test." *Id.* To do so, Plaintiffs must show that Delo "expressly aimed" his conduct at the forum. *Id.* Plaintiffs make no such showing. None of the allegations specifically pertaining to Delo (that one of the BitMEX affiliates he co-founded was registered to do business in the U.S., SAC ¶ 18, that he helped design

10

the trading platform's automatic liquidation system, *id.* ¶ 84, and that he was aware that U.S. users were trading on the platform, *id.* ¶ 167) suggest that Delo "expressly aimed" any conduct, let alone case-specific conduct, at the U.S.

Plaintiffs allege that BitMEX did not have sufficient measures in place to prevent U.S. users from trading, and that Delo was a passive recipient of reports from Dwyer indicating that U.S. users were in fact trading on the platform in violation of BitMEX's terms of service. SAC ¶¶ 165-69. However, the SAC does not contain any factual allegations specifically linking Delo's alleged knowledge that U.S. users were trading on BitMEX to conduct by Delo "expressly aimed" at the U.S. To the contrary, the SAC itself alleges Delo worked to keep U.S. users off the platform. *See* SAC ¶ 26 (quoting statement from Delo's allocution that "[we] would regularly find U.S. users and kick them off"). And Plaintiffs' bare allegation that Delo (and Hayes and Reed) "willfully facilitated" U.S. users on the platform, *id.* ¶¶ 34, 167, is far too general and conclusory to support personal jurisdiction.

Further, a defendant's mere knowledge of potential effects felt in the U.S. cannot justify exercising personal jurisdiction over that defendant. *Tarsavage*, 3 F. Supp 3d at 145; *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017). Even assuming that, based on Delo's alleged knowledge, "harm in the forum [was] foreseeable," Second Circuit case law is settled that foreseeability "is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).

        ii.        **Delo Did Not Purposefully Avail Himself of the Privilege of Conducting Activities in the Forum.**

Plaintiffs also fail to allege that Delo "purposefully availed [himself] of the privilege of doing business in the forum." *Das*, 332 F. Supp. 3d at 800. The SAC, like its predecessors, does

11

not include any allegations as to Delo's domicile or residence, and does not allege that Delo entered the U.S.

Plaintiffs may contend that Delo has sufficient contacts with the U.S. to satisfy the purposeful availment prong of the minimum contacts analysis because they allege that (1) Delo is a co-founder of Defendant ABS, a Delaware company registered to do business in New York, and (2) BitMEX had employees located in the U.S. These allegations are insufficient to establish that Delo—as an individual—purposefully availed himself of the privilege of conducting activities in the U.S.

First, Delo's alleged position as a co-founder of ABS does not satisfy the minimum contacts analysis. The SAC does not contain any specific allegations describing Delo's role with respect to the operations of ABS, and there are no allegations linking Delo to ABS's core operations. *See* SAC ¶ 19. Instead, Plaintiffs rely on inadequate general allegations, SAC ¶ 26 ("Defendant Ben Delo co-founded both HDR and ABS"), and impermissible group pleading, *id.* ¶ 27 ("Hayes, Reed, and Delo together controlled the operations of BitMEX.").

Second, the alleged presence of other BitMEX employees in the U.S. does not constitute an allegation that Delo purposefully availed himself of the privilege of conducting activities in the U.S. It is well settled that jurisdiction over a corporate officer "in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 Dist. LEXIS 45891, at *13 (S.D.N.Y. Mar. 31, 2014).

### iii. Plaintiffs' Claims Do Not Arise Out of or Relate to Any Conduct by Delo.

To establish Delo's minimum contacts, Plaintiffs must also show that their claims "arise[] out of, or relate[] to, [Delo's] contacts with the forum." *Das*, 332 F. Supp. 3d at 800. Plaintiffs do not allege that Delo was a primary participant in any suit-related conduct at all, much less suit-

related conduct directed at the U.S. Delo's alleged role as a designer of BitMEX's automatic liquidation system, which is a technical feature of the platform, is unrelated to the SAC's core allegations. *See supra* pp. 3-4.

Plaintiffs may argue again that Delo had engaged in suit-related conduct claiming the alleged fraud scheme is "inseparable from BitMEX's automatic liquidation system and trading engine." ECF No. 72 at 8. But design of the trading engine and liquidation feature is not itself a violation of the CEA. Try as they might, Plaintiffs do not connect Delo's design work on BitMEX's trading platform to alleged fraud or manipulation by Delo.

### iv. Plaintiffs' Generalized Allegations that Delo "Controlled" BitMEX Are Insufficient to Confer Specific Jurisdiction Over Delo.

Plaintiffs allege, in conclusory fashion, that Hayes, Reed, and Delo, "together control[] the operations of BitMEX," that "employees who manage certain aspects of trading facility all ultimately act under the direction and control of Hayes, Delo, and Reed," and that Hayes, Reed, and Delo "control the bank and trading accounts for the various corporate entities." SAC ¶ 27. But these allegations are insufficient to subject Delo to specific jurisdiction.

Plaintiffs cannot rely on group pleading to establish personal jurisdiction over Delo. *See Berdeaux*, 561 F. Supp. 3d at 397 ("[T]he Court is unable to exercise personal jurisdiction over a particular defendant based on allegations that fail to distinguish among the Scott Group Defendants, leaving the Court no basis to discern who did what."). Moreover, "conclusory allegations of participation" by an alleged control person are insufficient to establish specific jurisdiction over the individual, even if the corporate entity may be subject to personal jurisdiction. *In re AstraZeneca Secs. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (allegations that "each individual" control person directed the purported wrongdoing were insufficient because they were

13

nothing more than "conclusory statements applicable to all individual defendants as a result of their positions within the Company").

This Court's decision in *Das* is strikingly on point here. In *Das*, the Court held that it did not have personal jurisdiction over defendant Davies, who lived in the United Kingdom but worked as a "chief executive" and served on the "Executive Committee" for a company listed on the New York Stock Exchange. 332 F. Supp. 3d at 796. Plaintiffs argued that jurisdiction over Davies was proper based on his role in developing a project associated with the alleged misconduct, his leadership and management positions, and his involvement in drafting the company's ethics code of conduct which prohibited the alleged misconduct. *Id.* at 801-02. This Court rejected plaintiffs' argument because the allegations were conclusory and applied equally to "all individual defendants as a result of their positions within the Company." *Id.* at 802. The allegations against Delo provide even less of a basis for jurisdiction than those deemed insufficient in *Das*, *AstraZeneca*, and other cases. *See, e.g.*, *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011).

### B.     Exercising Jurisdiction Over Delo Would Be Unreasonable.

The Court need not reach the second stage of the due process inquiry which requires that an assertion of personal jurisdiction "comport with traditional notions of fair play and substantial justice," or, in short, that it be "reasonable" under the circumstances. *Metro. Life*, 84 F.3d at 568. Should the Court reach the reasonableness inquiry, however, five factors should be considered:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* Applied to these facts, the above factors demonstrate that exercising personal jurisdiction over Delo would be unreasonable. Delo is not alleged to be domiciled in, reside in, or have entered the U.S.

Plaintiffs have previously suggested that exercising jurisdiction over Delo would be reasonable because, at the time the Amended Complaint was filed, Delo was actively litigating separate civil and criminal cases in this District. ECF No. 72 at 9. However, both the civil case initiated by the Commodity Futures Trading Commission ("CFTC") against Delo and the criminal case against Delo are now resolved and closed.[5] Because Delo is no longer litigating any cases in the U.S., the burden of having to litigate this case in a foreign forum would be considerable. *See SEC v. Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) ("[G]reat care and reserve should be reserved with extending our notions of personal jurisdiction into the international context."). Naming Delo as a Defendant in this case is nothing more than Plaintiffs' attempt to piggyback off separate, and now closed, enforcement actions that involved entirely different conduct and statues. The Court should reject Plaintiffs' invitation and decline to exercise personal jurisdiction over Delo.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Delo with prejudice.

---

[5] *See CFTC v. HDR Global Trading Ltd.*, 1:20-cv-8132 (S.D.N.Y.) (ECF No. 95); *United States v. Hayes*, No. 1:20-cr-500 (S.D.N.Y.). Notably, the CFTC case was resolved before the Court ruled on the merits of Delo's motion to dismiss for lack of jurisdiction. *CFTC v. HDR Global Trading Ltd.*, 1:20-cv-8132 (S.D.N.Y.) (ECF No. 75).

Dated: May 2, 2023
      New York, New York

Respectfully submitted,

*/s/ Harlan A. Levy*
Harlan A. Levy
Allen M. Thigpen
FOLEY HOAG LLP
1301 6th Avenue
New York, NY 10019
Tel.: (212) 812-0354
hlevy@foleyhoag.com
athigpen@foleyhoag.com

*/s/ Patrick J. Smith*
Patrick J. Smith
Selbie L. Jason
CLARK SMITH VILLAZOR LLP
250 West 55th Street
New York, NY 10019
Tel.: (212) 582-4400
patrick.smith@csvllp.com
selbie.jason@csvllp.com

*Attorneys for Defendant Ben Delo*

16