UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
BRETT MESSIEH AND DREW LEE, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                                **Plaintiffs,**

      -against-

HDR GLOBAL TRADING LIMITED, ET AL.

                                **Defendants.**
-------------------------------------------------------------------- x

**20-cv-3232 (ALC)**

<u>**ORDER AND OPINION DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**</u>

**ANDREW L. CARTER, JR., District Judge:**

Plaintiffs bring claims for Deceptive Device and Fraudulent Course of Business under 7 U.S.C. §§ 9(1), 25(a)(1)(B), (C)(iv), and Rule 180.1; Manipulative Device and Contrivance; under 7 U.S.C. §§ 9(1), 25(a)(1)(D)(i) and Rule 180.1; Price Manipulation under 7 U.S.C. §§ 9(3), 25(a)(1)(D)(ii); Principal-Agent Liability under 7 U.S.C. § 2(a)(1)(B) (Against HDR, Shine, ABS, ADR Services, and 100x); Aiding and Abetting under 7 U.S.C. § 13c(a)(Against the Individual Defendants). All of these claims relate to cryptocurrency securities traded on the BitMEX platform. Defendant Belo moved to dismiss the second amended complaint against him for lack of personal jurisdiction. The motion is DENIED.

PROCEDURAL HISTORY

The original complaint was filed on April 23, 2020. It was amended on February 12, 2021. Plaintiffs filed a Second Amended Complaint on March 21, 2023; Defendant Ben Delo moved to

1

dismiss for lack of personal jurisdiction on May 2; Plaintiffs filed an opposition on June 13; Defendants filed a reply on June 30.

## FACTUAL BACKGROUND

The facts are taken from the SAC, and for purposes of this motion, presumed to be true. Plaintiffs bring suit on behalf of a putative class of investors who purchased Bitcoin and Ehtereum products from BitMEX's exchange since February 28, 2016. SAC ¶ 1.

Defendant HDR Global Trading Limited ("HDR") launched in 2014. Its name is an acronym of the last names of Defendants Hayes, Delo, and Reed. HDR is the owner of the trading platform called BitMEX and operated BitMEX out of an office in Manhattan. SAC ¶18. HDR is incorporated in the Seychelles, with its principal office located at Global Gateway 8, Rue de la Perle, Providence Mahé,Seychelles. *Id*.

Defendant ABS Global Trading Limited ("ABS") is a Delaware corporation created in 2017 and wholly owned by HDR. Its name derives from the first names of its founders, Defendants Arthur Hayes, Ben Delo, and Sam Reed. It is registered to do business in New York. According to public records, it is headquartered at 31 Conduit Road, Flat 17B, The Morgan, Hong Kong. ABS is responsible for technical aspects of the BitMEX platform, including security services and implementing the user interface traders use to buy and sell products. SAC ¶ 19.

Defendant 100x Holdings Limited ("100x") is a holding company incorporated by Hayes, Delo, and Reed in Bermuda. Hayes "introduc[ed]" 100x on the BitMEX website in July 2020, announcing that "100x will become the new holding structure for HDR Global Trading and all our other assets, including the BitMEX platform." SAC ¶ 18-22.

BitMEX is a large crypto-asset exchange, conceived to serve Wall Street institutional investors. But since for the first 6 months, no one came to the platform, BitMEX switched its focus to retail traders, offering 100X leverage trades, 20 times higher than the common ratio in trading. SAC ¶ 2, 5-6. BitMEX automatically liquidates customer's contracts when their values fall at or below a level specified by BitMex. When BitMEX liquidates a contract, BitMEX seizes all of the investor's remaining collateral for the contract. SAC ¶ 6-7. BitMEX routinely profits from these liquidations. SAC ¶ 6. These profits are placed in an Insurance Fund; Plaintiffs claim that BitMEX may withdraw the money in the Insurance Fund for any reason it chooses, at any time. SAC ¶ 7.

"BitMEX manipulated its systems and the market to benefit themselves at the expense of their customers. *Id*. BitMEX had an Insider Trading Desk, staffed by at least three employees with God Access to customer accounts. Plaintiffs claim that BitMEX lied to customers, inducing them to believe that certain information was private, but BitMEX used this information, allowing them to determine which market movements would liquidate the highest number of customers, subsequently making strategic trades to produce those movements." SAC ¶ 3.

"BitMEX hid the Insider Trading Desk from customers until April 30, 2018, under pressure from an independent analyst. After revealing the existence of this desk, BitMex's general counsel and outside counsel resigned. BitMEX claimed that it would serve a neutral market-making role, but continued to trade secretly against its customers, using burner accounts." SAC ¶ 4.

In addition, BitMEX frequently blocked customers from trading in their accounts, blaming it on technical glitches and limitations. But insider trading accounts created by the Insider Trading

Desk were immune from lockouts that plagued regular customers, giving BitMex a trading advantage it used against its customers. SAC ₱ 11.

Furthermore, BitMex manipulated prices of referenced assets on other exchanges, causing manipulation of its own derivatives, by strategically timing trades when those exchanges were vulnerable to manipulation. SAC ₱ 12.

Delo was central to each of these manipulative efforts. He developed key marketing techniques, including posting up next to a Lamborghini to promote BitMEX at a major crypto-asset conference in New York. See Goldstein Decl. Ex. 1.2. He conceived of and designed the liquidation system, enabling BitMEX to profit from the manipulation. SAC ¶ 84. Due to his senior role, Delo had to approve "key financial and trading decisions," which would include the operation of the Insider Trading Desk. SAC ¶ 27. In addition, Delo personally traded on the platform, benefitting from these same undisclosed advantages. SAC ¶ 63.

BitMEX operated extensively in the United States. Id. ¶¶ 33–34, 166. Defendant ABS Global Trading, which Delo helped found and controlled, is a Delaware entity registered to do business in New York. Id. ¶¶ 19, 23, 26. "Defendant Greg Dwyer, who worked closely with Delo on the automatic liquidation system, worked and lived in New York, SAC¶ 28, 84. Twenty–thirty percent of all the exploited BitMEX traders were in the United States. SAC ¶ 33. "Delo allowed certain influential users whom he knew to be U.S. citizens to trade on BitMEX, and admitted that he understood that U.S. customers were trading on BitMEX". SAC ¶ 167.

Since its inception, BitMEX has flouted financial regulators worldwide by operating as an unregistered exchange. SAC ₱ 58.

4

'

## LEGAL STANDARD

On a motion to dismiss, Plaintiffs need make only a "prima facie showing" of personal jurisdiction over Delo, which may be supported "solely by allegations." See *Dorchester Fin. Sec.,Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). The Court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id*.

## DISCUSSION

Under the Commodity Exchange Act, the relevant personal jurisdiction test is specific jurisdiction, and the relevant forum is the United States as a whole. *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008)). Specific personal jurisdiction is proper when (1) the defendant "has sufficient 'minimum contacts' with the forum" and (2) "the exercise of jurisdiction under the circumstances [i]s 'reasonable.'" *Gucci Am., Inc. v. Weixing Li*, 135 F.Supp. 3d 87, 96 (S.D.N.Y. 2015).

To meet the threshold for "sufficient minimum contacts" the defendant must "purposefully avail[] [himself] of the privilege of conducting activities within the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Moreover, the plaintiffs' claims must "arise out of or relate to the defendant's contacts with the forum." *Id*. at 1025.

Defendant Delo claims that, like defendant Davies in *Das v. Rio Pinto*, 332 F.Supp. 3d 786 (S.D.N.Y. August 31, 2018), the Court lacks personal jurisdiction over him. But Davies was a

5

chief executive and served on an executive committee for a foreign company, even though the company was listed on the NYSE. The company, Rio Tinto, was incorporated in England and Wales, and the Company's principal executive offices were located at 6 St. James's Square, London. Dkt 16-cv-9572; ECF 1; Par 20.

In Contrast, ABS,the company that Delo co-founded, and a company that is intertwined with BitMEX's alleged wrongdoing, is a U.S. based company, founded in Delaware, conducting business in New York and California. In addition, Delo designed key aspects of the BitMEX website and platform that allowed BitMEX to liquidate accounts to the detriment of Plaintiffs and the benefit of Defendants. The BitMEX platform operated from New York, and Delo supervised employees operating in the United States, concerning the creation and maintenance of BitMEX's systems. In addition, Delo actually came to New York, posting up next to a Lamborghini to draw the attention of U.S. customers, inducing them to invest in BitMEX.

Plaintiffs have sufficiently alleged that Delo has purposely availed himself of the benefits of the forum–the United States.

Plaintiffs' claims directly arise out of and relate to Delo's contacts with the United States, which include marketing efforts, creating the systems that led to Plaintiffs' injuries, running the Defendant corporations that managed and profited from this manipulation. The nexus between contacts and claims requires only "an affiliation between the forum and the underlying controversy," not "proof of causation." *Ford*, 141 S. Ct. at 1025–26 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty*, 137 S. Ct. 1773, 1780 (2017)).

Regarding due process, "The reasonableness inquiry requires courts to decide whether asserting personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice." *Goodyear,* 564 U.S. at 923 (quoting International Shoe, 326 U.S. at 316). Relevant factors include (1) the burden the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *See Chloe v. Queen Bee of Beverky, LLC,* 616 F.3d 158, 173 (2d Cir. 2010). "[T]he exercise of jurisdiction is favored where the plaintiff has made the threshold showing of minimum contacts," though it may be defeated where the defendant makes a compelling showing of unreasonableness. *Metro. Life Ins. Co.*, 84 F.3d at 568. Specifically, the defendant bears the burden of demonstrating that the assertion of jurisdiction in the forum will "make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478."

Delo has not made a compelling showing of unreasonableness. Personal jurisdiction is appropriate.

## CONCLUSION

Delo's remaining arguments are without merit.  His motion is DENIED.

**SO ORDERED.**

**Dated: April 3, 2024**
       **New York, New York**

                                               **/s/ Andrew L. Carter, Jr.**
                                               **ANDREW L. CARTER, JR.**
                                               **United States District Judge**