**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRETT MESSIEH and DREW LEE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HDR GLOBAL TRADING LIMITED, ABS GLOBAL TRADING LIMITED, 100X HOLDINGS LIMITED, SHINE EFFORT INC LIMITED, HDR GLOBAL SERVICES (BERMUDA), ARTHUR HAYES, BEN DELO, GREG DWYER, and SAMUEL REED,<br><br>Defendants. | No. 1:20-cv-03232-ALC-SDA |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DREW LEE'S MOTION FOR LEAVE TO JOIN PROPOSED PLAINTIFF FELIX LUFKIN

Plaintiff Drew Lee respectfully moves, pursuant to Rules 15(a)(2), 20, and 21 of the Federal Rules of Civil Procedure, for the Court's leave to join Felix Lufkin as an additional named plaintiff and representative of the proposed class and to file the Proposed Third Amended Complaint ("PTAC")[1] reflecting allegations concerning Lufkin (the "Motion"). Good cause exists to join Lufkin as a plaintiff.[2]

---

[1] The PTAC is attached to the Declaration of Jordan A. Goldstein filed herewith ("Goldstein Declaration" or "Goldstein Decl.") as Exhibit 1. A redline comparing the PTAC to the Second Amended Complaint ("SAC") is attached to the Goldstein Declaration as Exhibit 2.

[2] On September 6, 2024, Plaintiff sought consent to the relief requested in the Motion from Defendants HDR Global Trading Limited, ABS Global Limited, 100X Holdings Limited, Shine Effort Inc Limited, HDR Global Services (Bermuda), Arthur Hayes, Ben Delo, Greg Dwyer, and Samuel Reed (together, "Defendants"). Defendants stated that they were not in a position at this time to provide their position on the Motion. Defendants further stated that, in the event they opposed the Motion, they would not agree to an abbreviated briefing schedule.

Lufkin's claims arise from the same facts and circumstances alleged in the SAC. Similar to Lee, Lufkin is an investor in crypto-commodity derivatives on BitMEX who suffered substantial losses as a result of Defendants' deceptive and manipulative conduct. Among other things, Lee and Lufkin both seek relief for harm resulting from the same series of transactions or occurrences. Lee's and Lufkin's claims turn on common issues of fact and law, favoring resolution in a single proceeding.

While the putative class currently is represented by Lee, leadership of this action by multiple jointly represented named plaintiffs will ensure long-term stability—a benefit the putative class enjoyed until recently, when Plaintiff Brett Messieh dropped out of this action, leaving Lee as the sole named plaintiff. Joining Lufkin as a plaintiff will not prejudice any party or delay this action, given that discovery is at an early stage and Lufkin will provide discovery regarding his claims on an expedited basis pursuant to the protocols already being negotiated by the parties.[3]

## **BACKGROUND**

This case is a putative class action by investors who incurred losses transacting in certain derivatives of the crypto-commodities Bitcoin and Ethereum on BitMEX, the digital trading platform owned and operated by Defendants. On April 23, 2020, Plaintiffs Lee and Messieh jointly filed the initiating complaint on behalf of themselves and a proposed class of similarly situated BitMEX customers, alleging violations of the Commodity Exchange Act ("CEA"). Dkt. 1. On June 4, 2020, the Court appointed Lee's and Messieh's counsel Selendy Gay PLLC ("SG") as Interim Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3). Dkt. 32.

---

[3] Counsel for Plaintiff Lee and Proposed Plaintiff Lufkin is available to discuss this matter at the Court's convenience, including at the status conference scheduled for September 10, 2024.

Lee and Messieh amended the complaint as of right on February 12, 2021, Dkt. 53, then filed the SAC at the direction of the Court on March 21, 2023, Dkt. 115. All Defendants moved to dismiss the SAC based on purported extraterritoriality, untimeliness, and failure to state a claim. Dkt. 120. Defendant Delo separately moved to dismiss on the additional ground of lack of personal jurisdiction. Dkt. 123. In April 2024, the Court denied both motions to dismiss in their entirety. Dkts. 145, 147.

On May 3, 2024, the Court approved the parties' joint proposed Case Management Plan, which remains in effect. Dkt. 160. The Case Management Plan provides for fact discovery continuing through May 2, 2025, to be followed by separate expert discovery and briefing on class certification. *Id.* at 4-5. It further provides that any amended pleading or joinder of an additional party requires "leave of the Court upon a showing of good cause." *Id.* at 5.

Plaintiff Lee and Defendants have conducted the initial steps of fact discovery in accordance with the Case Management Plan. Each party served initial sets of interrogatories and document requests on May 30, 2024. The parties exchanged responses and objections to those initial interrogatories and document requests on July 1, 2024. After his initial requests, Plaintiff Lee served two further sets of document requests on the corporate entity defendants ("HDR Group Defendants")—a second set on July 1, and a third set on July 30. The HDR Group Defendants served responses and objections to Plaintiff's second set of document requests on July 31. The parties are currently meeting and conferring regarding search parameters and custodians for further document productions. No depositions have been noticed or conducted to date. No subpoenas or other requests for third-party discovery have been served. *Id*. ¶¶ 8-10.

On June 20, 2024, Plaintiff Lee, through SG, filed a motion ("Withdrawal Motion") requesting (1) an order granting leave for Selendy Gay PLLC ("SG") to withdraw as counsel for

Messieh pursuant to Local Civil Rule 1.4, and (2) an order to show cause why Messieh's claims should not be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Dkt. 178. As explained in the Withdrawal Motion, SG was forced to seek this relief because Messieh indicated he did not wish to remain a named plaintiff and subsequently failed to cooperate in the prosecution of this matter. *Id.* at 2. On July 18, 2024, the Court granted the Withdrawal Motion's request for SG to withdraw as Messieh's counsel and "reserve[d] action" on the further request for an order to show cause. Dkt. 186 at 1 & n.1. On August 20, Messieh, acting *pro se*, requested that the Court dismiss him from this case. Dkt. 193.

On July 16, 2024, while the Withdrawal Motion was pending, SG was contacted for the first time by Lufkin, a member of the putative class, regarding BitMEX's alleged wrongdoing. Goldstein Decl. ¶ 9. Lufkin subsequently engaged SG as his counsel. *Id.* ¶ 10. Plaintiff Lee now seeks the Court's leave to join Lufkin as an additional named plaintiff and representative of the proposed class.

## **ARGUMENT**

Joinder of Lufkin as a named plaintiff in this action is appropriate under the present circumstances. The Court has authority to grant the requested joinder under Rules 20 and 21 of the Federal Rules of Civil Procedure, and good cause to join Lufkin exists because doing so will protect the interests of the putative class while promoting judicial economy.

Under Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The Court may exercise this authority to add a plaintiff who meets Rule 20's requirements for joinder. Under Rule 20(a), multiple persons may join as plaintiffs in the same action if (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

4

occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Rule 20(a) is interpreted liberally to promote judicial economy. *Wang v. Paterson*, 2008 WL 5272736, at *7 (S.D.N.Y. Dec. 18, 2008).

Proposed Plaintiff Lufkin easily satisfies the liberal standard for permissive joinder under Rule 20(a). His claims are substantially identical to Lee's, arising out of the same occurrences and implicating the same questions of law and fact. Lee and Lufkin both purchased Bitcoin and Ethereum derivative products on BitMEX and suffered losses during the proposed class period. PTAC ¶¶ 16-17. Both were subjected to multiple "liquidations" of their trading positions, *id.*, which they allege Defendants engineered through deceptive practices (*e.g.*, undisclosed insider trading) and price manipulation, in violation of the CEA, *e.g.*, *id.* ¶¶ 215-221, 227-241, 248-256. In the PTAC, Lee and Lufkin would plead identical causes of action arising from common facts. Lee's and Lufkin's claims thus are "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit," and "there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019) (permitting joinder under Rule 20(a)); *see also Pejovic v. State Univ. of New York at Albany*, 2018 WL 4228423, at *4 (N.D.N.Y. Sept. 5, 2018) (allowing joinder of additional plaintiffs in putative class action to avoid "waste of judicial and litigation resources").

Good cause exists to join Lufkin as a plaintiff because his participation in this action will promote judicial economy and protect the putative class from any future interruption in representation. Simply put, in a complex financial class action that will likely require multiple years to litigate through trial, two plaintiffs are better than one, particularly where the plaintiffs are individuals rather than institutional plaintiffs. Courts in this District routinely recognize that a "co-lead plaintiff structure can have the salutary effect of providing greater stability in the prosecution

of" a class action. *Lang v. Tower Grp. Int'l, Ltd.*, 2014 WL 12779212, at \*3 (S.D.N.Y. Jun. 17, 2014) (cleaned up); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004) (same); *Malasky v. IAC/Interactivecorp*, 2004 WL 2980085, at \*4 (S.D.N.Y. Dec. 21, 2004) (multi-plaintiff "structure provides flexibility and stability to the class if presented with the situation that either co-lead plaintiff fails to address certain interests within the class, drops out of the action or compromises the class in some fashion"); *Dolan v. Axis Capital Holdings Ltd.*, 2005 WL 883008, at \*5 (S.D.N.Y. Apr. 13, 2005) (similar). Here, one named plaintiff—Messieh—has already "drop[ped] out" of the action, *Malasky*, 2004 WL 2980085, at \*4, leaving Lee as the sole named plaintiff and representative of the putative class. Lufkin's service alongside Lee will restore the stability and flexibility of multiple named plaintiffs that the putative class previously enjoyed, and thus "better ensure that the litigation may continue uninterrupted if further events or information undermine either lead plaintiff's ability to represent the class." *Lang*, 2014 WL 12779212, at \*3.

Lee and Lufkin have acted diligently in seeking to join Lufkin as a plaintiff in response to circumstances that arose only recently. Messieh's failure to cooperate in prosecuting this action began after the Court denied Defendants' motions to dismiss, as discovery was beginning. *See* Dkt. 178. Lufkin contacted SG while the resulting Withdrawal Motion was pending and retained SG as his counsel shortly after that motion was granted. Lee (through SG) then acted swiftly to prepare the PTAC and file the instant motion. The timing of this motion shows exemplary diligence. *Compare Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (finding that "plaintiffs have demonstrated diligence" by moving to add plaintiffs known for four months and collecting cases finding diligence "despite significantly longer delays").

Adding Lufkin as a named plaintiff will not delay the resolution of this litigation or cause any prejudice to Defendants. Little discovery has taken place to date: only 192 documents have been produced by the parties, search parameters for further document productions are still under negotiation, no depositions have occurred, and no party has sought discovery from any third party. Goldstein Decl. ¶¶ 5-8. If Lufkin joins this action, he will provide discovery on an accelerated basis to "catch up" to Lee, keeping the discovery process on track to meet the deadlines set forth in the Case Management Plan. Specifically, Lufkin will (1) within 7 days of an order granting him leave to join this action, serve his initial disclosures pursuant to Rule 26(a)(1) and make an initial, voluntary production of documents including records of his BitMEX transactions; (2) within 7 days of being served with Defendants' first set of interrogatories to him, serve his responses and objections to those interrogatories (provided they are substantially the same as Defendants' initial interrogatories served on Lee); and (3) substantially complete his document productions simultaneously with Lee's substantial completion. Lee and Lufkin would not need significant incremental discovery from Defendants as a result of Lufkin's joinder. The fact that "there will be no delay (much less undue delay)" strongly favors Lufkin's joinder. *Cortese v. Skanska Koch, Inc.*, 2020 WL 13093237, at *2 (S.D.N.Y. Oct. 22, 2020) (permitting joinder of additional plaintiffs); *see also Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 270 (S.D.N.Y 2020) (joinder of new plaintiffs "would not result in significant prejudice to defendant" where plaintiffs represented it "would require limited discovery warranting less than two days of depositions"); *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *8 (E.D.N.Y. Mar. 5, 2012) ("[A]t this stage in the litigation, before the Plaintiffs have moved for class certification and where the parties have only engaged in limited discovery, the Defendant would not be prejudiced by the intervention" of an

additional plaintiff.); *Scott*, 300 F.R.D. at 200 (defendant "not prejudiced" by joining additional plaintiffs "because discovery has not yet concluded").[4]

Similarly, "[a]ddition of [Lufkin's] new claims will not prejudice defendants because the proposed claims are related closely to the original claims" already pled by Lee. *Duling v. Gristede's Op. Corp.*, 265 F.R.D. 91, 102 (S.D.N.Y. 2010) (cleaned up); *Waite*, 477 F. Supp. 3d at 270 (new plaintiffs' "joinder would not alter the scope of the claims against defendant, as they would be substantially similar to others raised already by other named plaintiffs"). Joinder accordingly would not "materially add to the burden of defending this action" or subject Defendants to any "unfair surprise." *Duling*, 265 F.R.D. at 102. Defendants would still face the same claims, brought by the same number of plaintiffs (two), as before Messieh's withdrawal.

Finally, in addition to satisfying the "good cause" requirement for the reasons discussed above, Lee's request to file an amended complaint adding Lufkin to this action and alleging facts concerning Lufkin also satisfies the "liberal and permissive standard" for amendment of pleadings under Rule 15(a)(2). *Chinese Am. Citizens Alliance Greater N.Y. v. New York City Dep't of Educ.*, 2024 WL 1795390, at *3 (S.D.N.Y. Apr. 25, 2024) (internal quotation marks omitted). Leave to amend "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, resulting prejudice to the opposing party." *Id.* No such reason to deny leave to amend exists here. The proposed amendment is not futile because Lufkin's claims "would survive a motion to dismiss," *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 151 F. Supp. 3d 319, 329 (S.D.N.Y. 2015), as demonstrated by the fact that Lee's virtually identical

---

[4] Even if Lufkin's joinder would impose *some* discovery burden on Defendants (which it would not), that would "not constitute undue prejudice" justifying denial of joinder. *Id.* (quoting *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.*, 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001)).

claims have *already* survived motions to dismiss. Dkts. 145, 147. Moreover, the "proposed amendment is not prejudicial or in bad faith because it comes early in the litigation, before substantial discovery has taken place, and relies on the same facts as the original complaint." *Fastiggi v. Waterview Hills Nursing Center, Inc.*, 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998). As discussed above, there was no undue delay in bringing this motion, and granting it will not delay this litigation or otherwise prejudice Defendants. Discovery in this action can and should proceed uninterrupted while Defendants answer the PTAC.

<u>**CONCLUSION**</u>

For the forgoing reasons, Plaintiff Drew Lee respectfully requests that the Court grant leave to join Felix Lufkin as an additional named plaintiff and proposed representative of the putative class and to file the Proposed Third Amended Complaint, and such further relief as the Court deems just and proper.

Dated:     September 6, 2024                  Respectfully submitted,
           New York, NY

                                             */s/ Jordan A. Goldstein*
                                             Jordan A. Goldstein
                                             Oscar Shine
                                             SELENDY GAY PLLC
                                             1290 Avenue of the Americas, 20th Floor
                                             New York, NY 10104
                                             jgoldstein@selendygay.com
                                             oshine@selendygay.com

                                             *Counsel for Plaintiff Drew Lee, Proposed Plaintiff Felix*
                                             *Lufkin, and the Proposed Class*